THIS ORDER IS APPROVED.

Dated: November 1, 2018

Brenda Moody Whinery, Chief Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>DOUGLAS E. PEERY,<br>Debtor. | Chapter 11 Proceeding<br>Case No. 4:17-bk-13595-BMW |
| DOUGLAS E. PEERY,<br>Plaintiff,<br>v.<br>MEGAN ESCOBAR,<br>Defendant. | Adversary Case No. 4:18-ap-00064-BMW<br><br>**RULING AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT AND REQUESTS FOR ATTORNEYS' FEES** |

This matter is before the Court pursuant to the *Motion for Summary Judgment and Request for Attorney Fees* (the "MSJ") filed on May 24, 2018, by Megan Escobar (the "Defendant" and/or "Ms. Escobar"), the *Motion for Partial Summary Judgment to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 101(14)(A) and 523(a)(5)* ("the Motion for PSJ") filed on June 18, 2018, by Douglas Peery (the "Debtor" and/or "Plaintiff"), and all related responsive pleadings thereto.

In her MSJ, Ms. Escobar asks the Court to determine that certain debt is non-dischargeable pursuant to § 523(a)(15). In his Motion for PSJ the Plaintiff asks the Court to find that the debt is dischargeable pursuant to § 523(a)(5). Both parties have requested attorneys' fees.

Oral argument was presented at a hearing held on October 30, 2018. Upon consideration of the entire record in this matter, the Court issues the following ruling.

**Jurisdiction**

This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334(b).

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), which is incorporated by Bankruptcy Rule 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The facts submitted are viewed most favorably to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). At the summary judgment stage, the court's role is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511, 91 L. Ed. 2d 202.

Local Rule 9013-1(g) provides as follows:

> Any motion for summary judgment must set forth separately from the memorandum of law the specific facts on which the moving party relies. The specific facts must be set forth in serial fashion, not in narrative form. For each fact, the statement must refer to a specific part of the record where the fact may be found (e.g., affidavit, deposition, discovery responses, etc.). A failure to submit

a separate statement of facts in this form <u>may</u> constitute grounds for the denial of the motion.
1) Any party opposing summary judgment must comply with the foregoing in setting forth the specific facts relied on in opposing the motion or that otherwise establish that a genuine issue of material fact exists that precludes summary judgment.
2) In the alternative, if the parties agree that no genuine issue of material fact exists, they must jointly file a statement of stipulated facts. For stipulated facts, the parties may state that their stipulations are entered into only for the purposes of the motion for summary judgment and are not to be otherwise binding.
3) Unless ordered otherwise, the party opposing or responding to a motion for summary judgment will have thirty (30) days after service within which to serve and file a response and the moving party will have fourteen (14) days after service of the response to serve and file a reply.

The version of Rule 9013-1(g) in effect when the parties filed their motions for summary judgment is substantially similar to the rule currently in effect, though it did not explicitly state that a party's failure to submit a separate statement of facts in the proper format may constitute grounds for denial of the party's motion.

Ms. Escobar's MSJ was not accompanied by a separate statement of facts. Counsel for Ms. Escobar did, however, include the facts in her MSJ and supplemented her MSJ with the relevant documents. (*See* Dkt. 18).

The Debtor's Motion for PSJ largely complies with Local Rule 9013-1(g), though some of his facts are not accompanied by a reference to the record where such facts may be found.

Given the foregoing, the Court does not find it necessary to deny either the MSJ, or the Motion for PSJ, for failure to fully comply with Local Rule 9013-1(g). The Court, however, cautions counsel for Ms. Escobar to more carefully follow the rules in the future.

Further, it appears that although the parties did not file a joint statement of stipulated facts pursuant to Local Rule 9013-1(g)(2), the parties do not dispute any material facts. Instead, the parties disagree about how the law applies to the facts.

**Findings of Fact**

The undisputed facts are as follows:

On September 2011, Ventura-Pacific Development, Inc. ("VPD") and Ms. Escobar entered into a Stock Redemption Agreement, wherein VPD agreed to purchase Ms. Escobar's shares in VPD for $351,000 pursuant to the terms set forth in a Promissory Note. (Dkt. 15 at Ex. B, ¶¶ 3.0, 4.0; Dkt. 18 at Ex. 2, ¶¶ 3.0, 4.0).

Pursuant to the Promissory Note, VPD was to pay Ms. Escobar the principal balance of $351,000 plus interest at an annual rate of 4.238%, or at a rate of 10% per annum in the event of a default, over a period of 10 years in 120 installments, beginning on October 1, 2011. (Dkt. 15 at Ex. C; Dkt. 18 at Ex. 2).

The Stock Redemption Agreement was signed by the Debtor as the President/CEO of VPD and Ms. Escobar in her individual capacity. (Dkt. 15 at Ex. B; Dkt. 18 at Ex. 2).

Ms. Escobar and the Debtor were married on April 7, 2012. (Dkt. 15 at Ex. F, ¶ A; Dkt. 18 at Ex. 1, ¶ A).

On December 31, 2012, the parties executed an Addendum to Stock Redemption and Promissory Note (the "Addendum"), pursuant to which the Debtor became the maker under the Stock Redemption Agreement and the Promissory Note, effective December 31, 2012. (Dkt. 15 at Ex. D; Dkt. 18 at Ex. 3).

Under the terms of the Addendum: (1) the Debtor assumed all responsibility and liability to fulfill the terms of the Stock Redemption Agreement and Promissory Note; (2) the value of the Promissory Note was reset to its original amount; (3) the parties agreed that all previous payments made by VPD would be considered a gift to Ms. Escobar; and (4) the parties agreed that the payment schedule would begin on January 15, 2013, with all subsequent payments to be due and payable by the 15th of each month thereafter until paid in full. (Dkt. 15 at Ex. D; Dkt. 18 at Ex. 3).

The Addendum is signed by Ms. Escobar and the Debtor in their individual capacities. (Dkt. 15 at Ex. D; Dkt. 18 at Ex. 3).

On December 31, 2012, Ms. Escobar and the Debtor also entered into a (Post) Nuptial

Agreement. (Dkt. 18 at Ex. 4). Pursuant to the (Post) Nuptial Agreement, upon the filing of a petition for dissolution of marriage, VPD was to be awarded to the Debtor and the Debtor was to buy out Ms. Escobar's community interest therein pursuant to the terms of the (Post) Nuptial Agreement. (Dkt. 18, Ex. 4 at ¶ 3.h.ii). The (Post) Nuptial Agreement specifies that "[t]he promissory note due and owing to [Ms. Escobar] from [the Debtor] for her shares of Ventura Pacific Development, Inc., with a principal balance of $351,000" is Ms. Escobar's sole and separate property. (Dkt. 18, Ex. B to Ex. 4; *see also* Dkt. 18, Ex. 4 at ¶ 3.h.ii).

The parties separated sometime thereafter.

On May 17, 2016, the parties entered into a Marital Settlement Agreement. (Dkt. 15 at Ex. F; Dkt. 18 at Ex. 1). The Marital Settlement Agreement provides in relevant part:

> 1. DEBTS, LIABILITIES AND OBLIGATIONS.
> . . . .
>
> (b) DOUG'S OBLIGATIONS. Except as may otherwise be provided in this Agreement DOUG shall assume sole responsibility for payment of and shall pay all of the following obligations and shall indemnify, defend and hold MEGAN free and harmless therefrom and from any attorneys' fees costs and expenses incurred in connection within:
>   (1) All debts, liabilities and obligations he has personally incurred or are in his name, that remain unpaid as of the date of this Agreement, and for which no other provision is made in this Agreement.
>   (2) All debts, liabilities, obligations, encumbrances, liens, property taxes, taxes on gains, and indebtedness, of every kind and nature, in connection with or related in any way to all property awarded to him herein, to include, without limitation, all obligations owing with respect to all business entities owed by DOUG.
>  . . . .
>
> 2. PROPERTY.
> . . . .
>
> (i) PROMISSORY NOTE. DOUG affirms his personal obligation to MEGAN pursuant to the pre-marital Promissory Note ("Note"), DOUG acknowledges the importance of timely payments on the Note, however, both parties acknowledge that the Note is not a

domestic support order. DOUG agrees to secure the Note with a life insurance policy, naming MEGAN as the beneficiary of any amount equal to the outstanding balance on the Note. DOUG may reduce the beneficiary amount on an annual basis to reflect the payments made on the Note during the prior year. In the event of DOUG'S death, any excess proceeds shall revert to DOUG'S contingent beneficiary, or in the event there is none, to DOUG'S estate. DOUG shall execute a release of information to MEGAN upon presentation of same to allow MEGAN to communicate directly with the insurance company to confirm the policy is current through the term of the Note. DOUG shall also provide MEGAN with a copy of the insurance policy. DOUG also affirms, pursuant to paragraph 24 herein, that in the event of MEGAN'S death prior to the satisfaction of the Note, his obligations under this paragraph shall be to the benefit of MEGAN'S estate.

. . . .

7. SPOUSAL MAINTENANCE.
MEGAN and DOUG do hereby forever release, waive and discharge the other from any and all claims upon the other for spousal maintenance, alimony or support of any kind or nature. Both acknowledge that one of the purposes of this Agreement is to finally and forever settle and waive all such claims which either party may now or hereafter have, and each agrees that regardless of any change of circumstances as to either or both of the parties, that each does hereby expressly and forever waive any claim for spousal maintenance, alimony or support from the other.

. . . .

23. DISPUTES.
In the event either party commences an action in a court of law because of a breach of this Agreement by the other party or to enforce the provisions hereof, the prevailing party in such action shall be entitled to be awarded reasonable attorney's fees, court costs and other expenses in connection with such action, including, but not limited to, filing fees; expert witness fees; deposition costs; and transportation, lodging and meal expenses of the prevailing party and witnesses."

(Dkt. 15 at Ex. F; Dkt. 18 at Ex. 1).

The Marital Separation Agreement awarded "[a]ll right, title, and interest" in VPD to the Debtor and awarded "[t]he Promissory Note payable by [the Debtor]" to Ms. Escobar. (Dkt. 15 at Ex. A and B to Ex. F; Dkt. 18 at Ex. A and B to Ex. 1).

The Marital Separation Agreement was approved, confirmed and ratified by the State Court, and incorporated and merged into the Consent Decree of Dissolution of Marriage entered by the Pima County Superior Court on May 25, 2016. (Dkt. 15 at Ex. E, ¶ D; Dkt. 18 at Ex. 1, ¶ D). In the Consent Decree of Dissolution of Marriage, the court further found that "[n]either party is entitled to and neither party is awarded spousal maintenance." (Dkt. 15 at Ex. E, ¶ 9; Dkt. 18 at Ex 1, ¶ 9).

**Legal Analysis**

Section 523(a)(15) of the Code excepts from discharge "any debt – to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." 11 U.S.C. § 523(a)(15).

Section 523(a)(15) was added to the Code to supplement the exception to discharge for domestic support obligations in § 523(a)(5), thereby broadening the scope of marital debts that are not dischargeable. *Adam v. Dobin* (*In re Adam*), No. ADV 12-01295-DS, 2015 WL 1530086, at *5 (B.A.P. 9th Cir. Apr. 6, 2015), *aff'd,* 677 F. App'x 353 (9th Cir. 2017); 4 COLLIER ON BANKRUPTCY ¶ 523.23 (16th ed. 2018) (citing Pub. L. No. 103-394, § 304 (1994)). BAPCPA broadened the marital debt exceptions to discharge even further by amending § 523(a)(15) to remove the financial capacity and balancing of the detriments components that were part of the original statute, and by amending § 523(c)(1) so that debts falling within the scope of § 523(a)(15) are no longer automatically discharged if a party does not request a determination from the bankruptcy court. *Adam*, 2015 WL 1530086, at *5-6.

The Ninth Circuit Bankruptcy Appellate Panel has determined that "[t]he evolution of § 523(a)(15) demonstrates Congress's intent to spread as large a net, and to include as many marriage dissolution-related claims as possible, within this exception to discharge." *Id.* at *4; *see also Francis v. Wallace* (*In re Francis*), 505 B.R. 914, 919 (B.A.P. 9th Cir. 2014) (noting that circuit courts of appeals, particularly the Fifth, Sixth, Seventh, and Ninth Circuits, have

recognized the wide breadth of § 523(a)(15)). Notwithstanding the bankruptcy goal of providing debtors with a fresh start, in which exceptions to discharge must be "confined to those plainly expressed" and must generally "be strictly construed against the objecting creditor and liberally in favor of the debtor[,]" courts have recognized "an overriding public policy favoring the enforcement of familial obligations." *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L. Ed. 717 (1915)); *Mele v. Mele* (*In re Mele*), 501 B.R. 357, 363 (B.A.P. 9th Cir. 2013) (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013)); *McFadden v. Putnam* (*In re Putnam*), No. 10-19719-A-7, 2012 WL 8134423, at *5 (Bankr. E.D. Cal. Aug. 30, 2012) (quoting *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984)).

In order to establish that a debt is non-dischargeable pursuant to § 523(a)(15), the non-debtor party must establish by a preponderance of the evidence: "(1) that the debt in question is owed to a former spouse of the debtor; (2) that the debt is not a support obligation within the meaning of § 523(a)(5); and (3) that the debt was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record." *Adam*, 2015 WL 1530086, at *6; *Mele*, 501 B.R. at 363 (recognizing that the standard of proof is preponderance of the evidence).

A. The debt must not be a support obligation within the meaning of § 523(a)(5)

Section 523(a)(5) excepts from discharge "any debt – for a domestic support obligation," which is defined in § 101(14)(A) as:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>   (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>   (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including

assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
  (i) a separation agreement, divorce decree, or property settlement agreement;
  (ii) an order of a court of record; or
  (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. 101(14).

In determining whether an obligation is intended for support of a former spouse, the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation. *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984).

In the present case there is no dispute that the debt at issue is not a support obligation.

B. <u>The debt must be "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record . . ."</u>

Whether a debt is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement or divorce decree is an issue of law. *Short v. Short* (*In re Short*), 232 F.3d 1018, 1022 (9th Cir. 2000). The Code does not define when a debt is "incurred." *Al-Hamdani v. Al-Akwaa* (*In re Al-Akwaa*), 585 B.R. 82, 86 (Bankr. S.D.N.Y. 2018) (citing *In re Gibson*, 219 B.R. 195, 202 (B.A.P. 6th Cir. 1998 and *In re Chaudry*, 569 B.R. 372, 375 (Bankr. D.N.J. 2017)); *see also* Code § 101 (containing no definition of "incurred"). Black's Law Dictionary defines "to incur" as "to suffer or bring on oneself (a liability or expense)." BLACK'S LAW DICTIONARY (10th ed. 2014)); *see also Al-Akwaa*, 585 B.R. at 86.

Some courts have read § 523(a)(15) broadly, as encompassing pre-existing debt recited in

a divorce decree. *See, e.g.*, *Lashinsky v. Lashinsky* (*In re Lashinsky*), 3:14-ap-21-PMG, 2014 WL 3337467, at *2 (Bankr. M.D. Fla. June 7, 2014) ("For purposes of § 523(a)(15), an existing debt between spouses is 'incurred' in the course of a divorce or in connection with a divorce decree when the debt is expressly incorporated in the judgment of dissolution."); *In re Hall*, 285 B.R. 485, 489 (Bankr. D. Kan. 2002) (finding that where the divorce decree expressly incorporated the repayment terms of pre-divorce debt, the debt was incurred in the course of divorce and in connection with the divorce decree).

Such courts generally rely on *Short v. Short* (*In re Short*), 232 F.3d 1018 (9th Cir. 2000) to support their broad reading of § 523(a)(15). In *Short*, the Ninth Circuit addressed the dischargeability of debt incurred by one spouse before the parties' divorce, the repayment of which was contingent upon the length of the parties' marriage. Before the *Shorts* were married, Ms. Short loaned Mr. Short $50,000. *Short*, 232 F.3d at 1020. After the couple were married, Ms. Short loaned Mr. Short additional funds. *Id.* Mr. and Ms. Short subsequently entered into a post-nuptial agreement to memorialize Mr. Short's obligation to repay the sums Ms. Short had loaned him. *Id.* The post-nuptial agreement provided that Mr. Short's obligation to repay Ms. Short was Ms. Short's separate property, but that if the parties' marriage lasted more than 3 years, the obligation would be cancelled. *Id.* at 1021. The Shorts separated fewer than 3 years after they were married, and they entered into a stipulated judgment of dissolution. *Id.* The judgment provided that the parties' stipulation superseded the post-nuptial agreement, and the judgment contained a provision requiring Mr. Short to repay Ms. Short the amount she had loaned him plus interest. *Id.*

The bankruptcy court below concluded that repayment of the loan was conditioned upon a divorce within three years of the parties' marriage, therefore signaling that the loan had been made in contemplation of and because of the parties' marriage, rendering the obligation non-dischargeable. *Id.* at 1022. On appeal, the Ninth Circuit affirmed, concluding that "Mr. Short's contention that his $50,000 loan from Ms. Short [was] not divorce-related, even though the terms of its repayment were expressly incorporated into the decree of dissolution, lack[ed] merit." *Id.* at 1023.

Even the courts that have read § 523(a)(15) more narrowly recognize that pre-divorce obligations can fall within the scope of § 523(a)(15) if the parties' relative rights and obligations with respect to such obligations are altered by the parties' divorce. *See, e.g. Al-Hamdani v. Al-Akwaa (In re Al-Akwaa)*, 585 B.R. 82, 88 (Bankr. S.D.N.Y. 2018) (recognizing that a divorce decree that alters or fixes the terms of a debt or that directs payment of a debt as part of a property settlement could be considered debt incurred in the course of a divorce or in connection with a divorce decree); *Sherman v. Proyect (In re Proyect)*, 503 B.R. 765, 775-76 (Bankr. N.D. Ga. 2013) (recognizing that whether a pre-existing obligation is non-dischargeable pursuant to § 523(a)(15) turns on whether the parties' relative rights and obligations were changed by the divorce).

"The critical issue under § 523(a)(15) is not the timing but the nature of the debt." *Shepard v. Shepard (In re Shepard)*, No. 7-07-10497 SA, 2008 WL 5157898, at *2 (Bankr. D.N.M. June 30, 2008) (recognizing that where a marital settlement agreement "created significant new legal consequences because it extinguished some pre-existing obligations between the former spouses and created new ones[,]" such as 'new rights to payment that were independent of the debtor's preexisting liability[,]' the marital settlement agreement created new legal rights that fell within § 523(a)(15)'s exception to discharge); *see also In re Quarterman*, No. 11-07867-SSC, 2012 WL 4965159, at *4 (Bankr. D. Ariz. Oct. 17, 2012) (recognizing that the character of the debt determines whether the debt is dischargeable).

In this case, the Debtor relies heavily on *Yelverton v. Senyi De Nagy-Unyom (In re Yelverton)*, No. 09-00414, 2012 WL 4434087, at *5 (Bankr. D.D.C. Sept. 24, 2012) to support his argument that the debt at issue is not excepted from discharge under § 523(a)(15). The facts of *Yelverton*, however, are not analogous to the facts in this case.

In *Yelverton*, the court determined that the debtor's former wife had failed to establish that a rental obligation fell within the purview of § 523(a)(15) where the obligation was embodied in a prenuptial agreement that was not incorporated or merged into the parties' divorce decree. *Id.* at *10. The court determined that "[g]iven that the lease arrangement [had] retained its separate landlord-tenant character and was not merged into the divorce decree, the court [would] treat it

as a conventional business contract." *Id.*

Unlike in *Yelverton*, the Promissory Note at issue and the Debtor's personal obligation to pay on the Promissory Note were not only incorporated into the parties' (Post) Nuptial Agreement, but were also incorporated into the parties' Marital Settlement Agreement, which was affirmed and in turn incorporated into the parties' Divorce Decree.

Based on the undisputed facts and the representations of the parties' in the pleadings, two of the three elements required to establish that the debt is non-dischargeable under § 523(a)(15) are clearly satisfied. First, it is undisputed that the Debtor is Ms. Escobar's former spouse. Second, the Divorce Decree determined that neither party was entitled to nor awarded spousal maintenance, the parties explicitly acknowledged in the Marital Settlement Agreement that the Promissory Note at issue is not a domestic support order, and the parties agree in their pleadings that the debt is not a domestic support obligation.

The only remaining issue is whether the debt was "incurred by the [D]ebtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record[.]" The debt was initially incurred by VPD in 2011, before Ms. Escobar and the Debtor were married. Though the debt was initially commercial in nature given that it was incurred by VPD to purchase Ms. Escobar's shares of VPD, the nature of the debt changed over time. The obligation to pay the debt became the Debtor's in 2012, after the parties were married but before the parties were divorced, by virtue of the Addendum, which was executed on the same day the parties executed their (Post) Nuptial Agreement.

The Promissory Note at issue and the Debtor's personal obligation to pay off the Promissory Note were not only incorporated into the parties' (Post) Nuptial Agreement, but were also incorporated into the parties' Marital Settlement Agreement, which was in turn incorporated into the parties' Divorce Decree. The Marital Settlement Agreement also imposed an additional obligation on the Debtor to secure the Promissory Note with a life insurance policy naming Ms. Escobar as the beneficiary.

Given the fact that the Divorce Decree explicitly incorporates the obligation owed under the Promissory Note as secured in the Marital Settlement Agreement, the Court reads the

language of § 523(a)(15) as sufficiently broad to find that this debt was incurred in connection with the parties' Divorce Decree. The third prong under § 523(a)(15) is therefore satisfied.

**Request for Attorneys' Fees**

Ms. Escobar has also requested reasonable attorneys' fees in her Motion for Summary Judgment. Ms. Escobar requests such fees pursuant to A.R.S. § 25-324 and pursuant to "the legal documents and court order call[ing] for attorney fees to be paid to the prevailing party."

A.R.S. section 25-324 is found in chapter 3 ("Dissolution of Marriage") of title 25 ("Marriage and Domestic Relations") and provides for the award of attorneys' fees by the State Court under certain circumstances arising in the course of dissolution proceedings. This is not a dissolution proceeding. Given that Ms. Escobar has provided no authority for the applicability of A.R.S. § 25-324, nor does a plain reading of the statute render it applicable. Further, there is no general right to recover attorney's fees under the Bankruptcy Code. *Renfrow v. Draper*, 232 F.3d 688, 693 (9th Cir. 2000). The Ninth Circuit, however, has recognized that "if a divorce decree provides for the payment of attorney's fees, and state law issues are litigated in the bankruptcy proceedings, attorney's fees are available, but only to the extent that they were incurred litigating the state law issues." *Id.* at 694.

The pleadings, as submitted, do not support the request for fees, so the request is denied. This denial is without prejudice for Ms. Escobar to supplement her request with proper authority and an affidavit of counsel setting forth an itemized request for fees. Debtor will be given an opportunity to object prior to the Court ruling on any such request.

**Conclusion**

Based upon the foregoing, the Court finds and concludes that Ms. Escobar is entitled to summary judgment as a matter of law pursuant to 11 U.S.C. § 523(a)(15) and the debt owed to her by Debtor is non-dischargeable. The request for attorneys' fees is denied without prejudice for Ms. Escobar to supplement.

Given the ruling that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(15),

the Debtor's Motion for Partial Summary Judgment pursuant to § 523(a)(5) is moot and therefore denied.

Wherefore, based upon the foregoing, and for good cause shown;

IT IS HEREBY ORDERED granting Ms. Escobar's Motion for Summary Judgment and the debt owed to her by Debtor is non-dischargeable pursuant to 11 U.S.C. § 523(a)(15).

IT IS FURTHER ORDERED denying Ms. Escobar's request for attorneys' fees, without prejudice and with the opportunity to supplement consistent with this ruling.

IT IS FURTHER ORDERED denying the Debtor's Motion for Partial Summary Judgment.

SIGNED AND DATED ABOVE.